THE VILLAGE OF MARISSA, Appellee, *vs.* VAUGHN JONES *et al.* Appellants.

*Opinion filed October 22, 1927.*

1. SPECIAL ASSESSMENTS—*the statute providing for hard roads does not take from villages power to improve streets.* Section 9*a* of article 4 of the Road and Bridge act, providing, prior to its repeal in 1925, that any road in the State highway system lying within the corporate limits of a municipality of 7500 inhabitants or less may be paved by the State, did not take from villages of said population the power to improve their streets by paving, and where any street of such village has been designated as a part of the route of a bond issue highway the village may still provide by special assessment for a pavement of greater width and different materials than is specified for the bond issue road.

2. SAME—*when ordinance for paving street designated as State hard road is valid.* The State cannot be required to pay for the portion of a street designated as a State highway hard-surfaced road, the paving of which is undertaken by the local municipality, unless the State approves or consents to the character of the improvement; but where such consent and approval are shown and provision is made for giving the property owners the benefit of the amount to be paid by the State toward the cost of the pavement, the improvement ordinance cannot be said to be unreasonable and oppressive even though the State had contracted to pave its portion before the ordinance was passed.

3. SAME—*paving business street is a local improvement.* The fact that the paving of the principal business street of a municipality will be of advantage to the public generally does not change the character of the improvement, but it is still a local improvement if primarily of material advantage to adjacent property.

4. SAME—*when terminus of paving improvement is sufficiently described.* The description of the terminus of a pavement in an improvement ordinance is sufficiently definite if a competent engineer can locate the points from the description given, with the aid of the plans, plats and profiles attached to the ordinance.

5. SAME—*when estimate is not improper because signed by both engineer and president of the board of local improvements.* The fact that the estimate of cost recites that the president of the board of local improvements and the engineer both certify to the costs does not render the certificate and the ordinance invalid, where the

estimate is signed by both officers and does not purport to be a joint estimate but states that it is the estimate of each severally.

6. SAME—*when the petition for an assessment is properly filed.* Where an improvement ordinance designates that the petition for the assessment be filed by the president of the village it is sufficient where it is in the name of the village and is signed by the president of the village, and the fact that it is also signed by an attorney, who is not shown to be an officer of the village, does not affect the jurisdiction of the court to entertain the petition.

7. SAME—*what structure is not a bridge but a culvert.* While the construction of a bridge in a street crossing a creek is not a local improvement within the meaning of the statute providing for the levying of special assessments, a structure with an inside measurement of five feet cannot be regarded as a bridge but is a mere culvert.

8. SAME—*what is not proper question to ask witness on question of benefits.* Witnesses testifying on the question of benefits should not be asked whether in their judgment the improvement will enhance the value of the property of the objectors to the amount of the assessment, as that is an ultimate fact to be determined by the jury, but such witnesses may be asked their opinion as to the fair cash market value of the property before and after the improvement.

9. SAME—*when finding of jury on question of benefits will not be disturbed.* The Supreme Court will not disturb the finding of the jury on the question of benefits arising from the pavement of a street, especially where the jury viewed the premises, unless their finding is clearly and palpably against the weight of the evidence or based upon incompetent elements.

DUNN and THOMPSON, JJ., dissenting.

APPEAL from the County Court of St. Clair county; the Hon. WILLIAM P. GREEN, Judge, presiding.

J. R. McMURDO, for appellants.

L. N. NICK PERRIN, JR., (THEODORE E. KIRCHER, of counsel,) for appellee.

Per CURIAM: This is an appeal by six property owners, Vaughn Jones, Herb Cromer, Henry Cromer, Charles Rumpf, J. Ralph Lyons and W. M. K. Lyons, from a judg-

ment of the county court of St. Clair county in a proceeding to levy a special assessment for a local improvement in the village of Marissa, Illinois. The county court denied a motion to dismiss the petition, overruled the legal objections and entered judgment on the verdict of a jury confirming the assessment roll.

The improvement is designated as "Marissa Main street paving improvement." It contemplates the paving with concrete of Main street, in Marissa, a village having a population of 2134, from the south line of North Railroad street to the north line of the village, a distance of about 3025 feet, the cost to be borne by property specially benefited. The Main street to be improved extends north and south through the business district of the village. Commencing at the southern terminus of the proposed improvement the first two blocks extending north constitute business property, the next two blocks semi-business property, and the remainder residence property. From the southern terminus of the proposed improvement to the village limits on the north, seven streets intersect Main street east and west, which for convenience are designated as First, Second, Third, Fourth, Fifth, Sixth and Seventh streets. State highway Route No. 13 under the $60,000,000 Bond Issue act of 1917 enters the village from the east on Fourth street (Lyons street) and traverses that street to its intersection with Main street, and from that intersection runs north on Main street to the village limits. Before the origination of this improvement the State had built an 18-foot concrete road on Route No. 13 on Fourth street to its intersection with Main street and had also completed the road north of the village limits. At the time of the origination of this improvement there existed a contract between the State and a contractor for the laying of an 18-foot concrete pavement on Main street from the south line of the intersection of that street and Fourth street to the north village limits. In pursuance of this contract five concrete

culverts had been built on that part of Main street by the contractor and grading and excavation had been done preparatory to laying the concrete slab. After the origination of the scheme and the passage of the ordinance by the village board of trustees, and by reason thereof, the State, through the Department of Public Works and Buildings, on the day before the hearing on the petition before the court, released or withdrew that part of the work on Main street between the south line of the intersection of Fourth street and the village limits by a reduction order or authorization for the change of plans. The village by this improvement proposes to build a 36-foot concrete pavement on Main street from the south line of North Railroad street to Second street, and from thence north on Main street to the village limits a 30-foot concrete pavement, with all necessary storm sewers, drains, man-holes and catch-basins, and also the roadways of intersecting streets between the curb lines thereof and the street lines, with all necessary curbs, connections and adjustments, at an estimated cost of $38,140.14. The village did not enter into a contract or agreement with the Department of Public Works and Buildings for a different kind or width of pavement to be made on that part of Main street on Route No. 13, but seeks by this proceeding to put in the whole improvement by special assessment against the adjacent property, without regard to the State and without excepting the center 18 feet of the street from the improvement. The Department of Public Works and Buildings did, however, approve the plans and specifications for the pavement on that part of the street forming a part of Route No. 13, and their engineer testified that it was by reason of this proposed improvement by the village that the department canceled that part of their contract for the paving of Main street. The ordinance assesses the total cost of the improvement against the adjacent property without assessing anything for public benefits. The ordinance contains a proviso to the effect that if

an agreement is made between the State and the village whereby the State obligates itself to pay the costs of construction of the center 18 feet of the street between the south line of Fourth street and the north village limits, or pays any part of the cost thereof, the money so paid shall be paid to the assessed property owners or their proportionate amount. We interpret this proviso to mean that it is only the property owners in front of whose property the 18 feet of State highway is built that are to receive the benefit of any such payment that may be made by the State for the construction of said 18 feet of the State highway, as there is no legal reason why any part of such payment by the State should benefit the property owners on Main street that are not on the State highway. Under such construction one of the six objectors aforesaid, Vaughn Jones, would receive no part of any payment that may be hereafter made by the State, as his property is entirely south of all of the State highway aforesaid on Fourth (or Lyons) street and Main street.

The resolution originating the proposed improvement was passed June 20, 1924, and the ordinance, recommendation of the board of local improvements and the estimate of the cost of the improvement to the village council was dated June 30, 1924, and the ordinance for the improvement was passed and approved by the president and board of trustees of the village on July 1, 1924. On July 24, 1924, a petition was filed in the county court of St. Clair county in the name of the village, by the president of the board of trustees of the village and by "L. N. Nick Perrin, Jr., attorney specially employed by the board of local improvements of and by the village of Marissa," praying that proper steps be taken to levy a special assessment to pay the cost of the improvement. There were attached to the petition copies of the ordinance, the recommendation of the board of local improvements and the estimate of the cost of the improvement, which estimate was signed by the presi-

dent of the board of local improvements and by B. C. McCurdy, engineer specially employed by the board of local improvements. After the filing of the petition an assessor was appointed by the president of the board of local improvements to spread the assessment. The appointment of the assessor was approved by the court, and the assessor proceeded to assess the entire cost of the improvement against the property adjacent to the street without assessing anything against the village as public benefits. Appellants and others filed written objections to the confirmation of the assessment roll and also filed a motion to dismiss the petition and proceedings. The objections filed attacked the jurisdiction of the court, the validity, sufficiency and legality of the ordinance, the petition, estimate and assessment roll, and alleged that the greater part of the cost of the improvement should have been assessed as public benefits, and that the property of the appellants and other objectors was assessed for a greater amount than it was benefited. The legal questions were divided, for the purpose of hearing, into those which were raised by the motion to dismiss the petition and the legal objections which did not cover the points raised in the motion to dismiss. Evidence was heard by the court on each, and by stipulation all of the evidence heard on the motion to dismiss was considered by the court on the legal objections. The court overruled the motion to dismiss and heard further evidence on the legal objections and overruled them. Thereafter a jury was empaneled to hear the evidence on the question of benefits, and after the hearing before the jury and a view of the premises by the jury a verdict was returned finding that the property was not assessed more than it would be benefited by the making of the improvement. The court thereupon entered judgment confirming the assessment roll.

The first contention of appellants is that the village of Marissa was, at the time of the passage of the ordinance, without power or authority to improve that portion of Main

street north of Fourth (or Lyons) street by special assessment because it had been designated by the Department of Public Works and Buildings as one of the streets on which travel on State highway No. 13 should pass through the village, and a contract had been let by said department for the paving of the center 18 feet thereof. The decision of this court in *Village of Glencoe* v. *Hurford,* 317 Ill. 203, which was followed in *Village of Northbrook* v. *Sterba,* 318 id. 360, has settled the law adversely to appellants' contention.

It is next contended that the ordinance is unreasonable and oppressive in that it imposes upon the property owners the burden of building the entire 30 feet of pavement on Main street north of Lyons (or Fourth) street, when, if no such ordinance had been passed, the center 18 feet would have been paved by the State at no expense whatever to the property owners. The ordinance contains a section which provides that in case an agreement is entered into between the village and State under which the State pays to the village the cost of construction of the center 18 feet of the pavement, the amount so paid by the State shall be refunded or credited to the property owners assessed. At the time the ordinance was passed, at the time the petition was filed and at the time of the hearing in the county court, section 9*a* of article 4 of the Road and Bridge act of 1913 as amended was in force and effect. It is as follows:

"A road or part thereof lying within the corporate limits of any city, village or town having a population of seven thousand five hundred inhabitants or less, as shown by the last preceding Federal census, or that portion of any street or road along which the residences average more than two hundred feet apart, shall be improved or constructed by the State to connect or complete by the most direct route any hard-surfaced road forming a part of the State highway system as defined in 'An act in relation to State highways,' approved June 24, 1921, already improved or constructed,

or being improved or constructed to the corporate limits of such city, village or town. The cost of such road for the same width and of the same materials as outside of the corporate limits, shall be paid entirely by the State. By agreement between the Department of Public Works and Buildings and the common council or board of trustees, a road or street of greater width and different material may be constructed through such city, village or town by the Department of Public Works and Buildings, such city, village or town to pay the excess cost, if any, for the greater width or different material, but the State shall thereafter maintain such road within the corporate limits: *Provided,* that in case any such city, village or town has constructed or has started to construct such a road since January 1, 1922, the State shall upon the completion thereof thereafter maintain such road and shall refund to such city, village or town the cost of constructing same for the same width as the road outside the corporate limits. The money so refunded shall be paid into the general corporate fund in case the cost of constructing the road was paid out of such fund or if the cost of constructing the road was paid by special taxation or special assessment the money shall be distributed to each person who owns such assessed or taxed property at the time such distribution is made in proportion to the amounts assessed or taxed against such property."

Appellants contend that under this section no valid agreement could be made by which the village would be authorized to make the improvement and the State be bound to pay any part thereof. This court has settled the contention that this section takes away the power of cities and villages to improve streets designated as connecting links of the State highway system by special assessment and has settled it adversely to the contention now made by appellants. (*Village of Glencoe* v. *Hurford, supra.*) The right and power of the village to improve the entire street, including the strip where the hard road is located, without regard to

any agreement with the State, cannot be further questioned in view of the decision aforesaid. That decision does not settle the question that the State is not bound by section 9a to pay for the center 18 feet which is State highway, although it is to be built by the village. It cannot be questioned, we think, that the said section of the statute does require the State to pay for the center 18 feet to be built by the village. As already shown, the State by its said department has approved the village's plan for the improvement of the street and has consented to the village building it according to such plans and specifications, and we can see no reason why the State is not bound to pay for the building of the 18 feet of the street from the south line of Fourth (or Lyons) street to the north limits of the village, after receiving proper credit for the value of the improvement already built by the State on that 18-foot center, by grading the street and building the culverts, as already stated. In view of our former decision the statute must now be interpreted that it is the right and power of the village to improve the street, but that the State must approve or consent to the character of improvement that is to be put upon the street before it can be required to pay for the strip properly designated as the State highway road. This approval and consent have already been given, as before stated, and such consent and approval were all the State could do or give after the village insisted on its right of improving the street. It has therefore done all that is necessary to obligate it to pay for its part of the said improvement that it has not already actually constructed through its contractor. In view of the fact that the State is so obligated it cannot be reasonably contended that the ordinance aforesaid is unreasonable or oppressive. It was held in *City of Geneseo* v. *Shearer,* 326 Ill. 82, that a city may improve a street adopted as part of a State road and on agreement with the State to pay for an 18-foot strip of such pavement the city may levy a special assessment for the balance. We see

no difference in principle, therefore, in the plan proposed here, of levying the assessment for the entire work and rebating that part of the cost paid by the State. The fact that the Department of Public Works and Buildings had let a contract to pave an 18-foot strip in Main street does not affect the right of the village to improve it, (*Village of Glencoe* v. *Hurford, supra,*) though the property owners cannot, of course, be required to pay for the paving done by the State.

Appellants also contend that the contemplated improvement is not a local improvement but a public improvement. The petition herein is for the paving of the principal street of the village of Marissa. The evidence in the record shows that the paving of this street, while it would be a benefit to the public generally, and particularly that part connecting the State hard road through the village, still it would be a particular advantage to the immediate locality and increase the value of the property assessed. The fact that the improvement would be of advantage to the city and to the public generally does not change its character as a local improvement, as primarily it is of material advantage to the adjacent property. Where the improvement enhances the value of adjacent property, as distinguished from benefits diffused by it throughout the municipality, it is a local improvement. (*Village of Glencoe* v. *Hurford, supra; City of Waukegan* v. *DeWolf,* 258 Ill. 374; *City of Springfield* v. *Consolidated Railway Co.* 296 id. 17; *Northwestern University* v. *Village of Wilmette,* 230 id. 80; *City of Chicago* v. *Blair,* 149 id. 310.) Under the evidence in the present case the court properly held that the improvement was a local improvement.

It is next contended that the ordinance is invalid because the northern terminus of the 36-foot pavement is designated as "Second street," and under the general ordinances of the village of Marissa there is no such street in existence as Second street. The testimony of three engineers

was to the effect that by the ordinance they could locate and make the proposed improvement and could determine the location of the northern terminus of the 36-foot pavement. It is a general rule that a description is sufficiently definite if a competent engineer could locate the points from the description given. (*City of Staunton* v. *Bond,* 281 Ill. 568.) The plans, profiles and plats were attached to the ordinance, and by them the exact number of feet, in length, of the 36-foot pavement was given. There is no question but what the southern terminus of the 36-foot pavement was designated properly, and by aid of the plans, plats and profiles the northern terminus could be accurately located without reference to the description of it as Second street. A description of an improvement may be aided and made certain by the plans and profiles attached to and made a part of the ordinance. (*City of Watseka* v. *Orebaugh,* 266 Ill. 579.) Besides, there can be no question as to where the southern terminus of the 30-foot improvement began and that it continued from its southern terminus to the northern limits of the village.

The next contention of appellants is that the ordinance is invalid and the estimate of cost improper because it is a joint estimate and contains a joint certificate. The estimate recites that "I, Lawrence E. Nagel, president of the board of local improvements, and I, B. C. McCurdy, engineer, * * * do hereby certify that the estimate of costs," etc. The Local Improvement act provides that the estimate of the cost of the improvement must be made in writing by the engineer of the board of local improvements, if there be one, and if not, by the president of the board of local improvements over his signature. The estimate in this case was over the signature of each. It does not purport to be a joint estimate but properly states that it is the estimate of each severally, and the statute has been complied with.

It is contended by appellant that the county court did not have jurisdiction to entertain the petition to levy the

special assessment because it was not filed by some officer of the village. The ordinance for the improvement provides "that the president of the village of Marissa, Illinois, or the attorney specially employed, or some other qualified officer, be and he is hereby directed to file a petition," etc. The petition was filed in the name of the village of Marissa, "by Lawrence E. Nagel, president of the village of Marissa, Illinois, by L. N. Nick Perrin, Jr., attorney specially employed by the board of local improvements of and by the village of Marissa." Section 37 of the Local Improvement act provides that the officer designated in the ordinance shall file the petition in the name of the city, praying that steps be taken to levy a special assessment for a local improvement. The ordinance designated that the petition be filed by the president of the village, the petition was in the name of the village and signed by the president of the village, and we are of the opinion that the statute was followed. The fact that the petition was also signed by the attorney specially employed by the village board of local improvements may be considered as surplusage, as the statute was complied with when the petition was filed by the president of the village, and it is not important whether or not the attorney whose name was also signed to the petition was an officer of the village.

Counsel for appellants raise the further objection that the improvement required the building of a bridge across a branch or creek on Main street, which bridge has been built by the State, and that in an arrangement between the State and the village, if the State is given credit for building this bridge and the cost thereof is permitted to be deducted from the rebate to property owners, the result would be the building of the bridge by the property owners, and that in law a bridge is not a local improvement but a public improvement, and should therefore be built either by the State or the village. To this contention there appear to be two answers: First, the evidence does not show that a

bridge was built on Main street. While the construction of a bridge in a street crossing a creek is not a local improvement within the meaning of the statute providing for the levying of special assessments, (*City of Chicago Heights* v. *Walls,* 319 Ill. 411; *City of Waukegan* v. *De-Wolf, supra;*) the evidence shows that the structure built by the State was a culvert with an inside measurement of five feet by five feet. This does not come within the definition of a bridge. Second, since the culvert is already built, the cost thereof will not be included in the amount paid by the property owners. The culvert having been built by the State and paid for by it, it does not appear in what way the property owners will be required to re-pay the State. The State will pay that portion of the charges against the village represented by the 18-foot pavement.

Appellants further contend that the court erred in entering judgment on the verdict of the jury as to benefits, for the reason that the weight of the competent evidence shows that the property was not benefited the amount of the assessment, and for the further reason that the court admitted improper evidence on the question of benefits. Nine witnesses testified for appellants and sixteen witnesses testified for appellee. Three witnesses for appellee were asked and permitted to answer whether in their judgment the improvement would enhance the value of the property of the objectors to the amount of the assessment. These witnesses answered in the affirmative. This testimony was admitted over the objection of appellants, and its admission was error. Such evidence is an opinion as to the ultimate fact which was to be determined by the jury. Witnesses are not allowed to give opinions of that character. (*City of West Frankfort* v. *Marsh Lodge,* 315 Ill. 32; *City of Lincoln* v. *Chicago and Alton Railroad Co.* 262 id. 11; *City of Kankakee* v. *Illinois Central Railroad Co.* 258 id. 368.) In an inquiry of this character witnesses are permitted to give, and should be asked, their opinion as to the fair cash

market value of the property before and after the improvement. Whether the property will be benefited the amount of the improvement is a matter to be determined by the jury. The rule, however, adopted in this State is, that this court will not disturb the finding of the jury on the question of benefits unless their finding is clearly and palpably against the weight of the evidence or based upon incompetent elements. (*City of Chicago* v. *Vierling,* 277 Ill. 51; *City of Chicago* v. *Weber,* 260 id. 105; *City of Chicago* v. *Marsh,* 238 id. 254.) The court instructed the jury fully as to the proper elements to be taken into consideration in determining the question of benefits, and while it was error to permit these witnesses to give their opinion as to the ultimate fact to be determined by the jury, we are unable to say, on examination of the evidence, that the jury's finding is clearly against the weight of the competent evidence. In this case the jury viewed the premises, and this court must also consider the probative force of such view. *Chytraus* v. *City of Chicago,* 160 Ill. 18.

Appellants also contend that the court erred in refusing to permit them to show that the uneven and muddy condition of the street was due to its having been excavated by the State. The record shows that appellant Jones was permitted to testify that the street had been excavated from twelve to eighteen inches, that Route No. 13 of the State highway extends across Main street from Lyons street to the city limits, and that three or four culverts had been put in. We are of the opinion, therefore, that appellants had the advantage of showing that the condition of the street was not due to natural conditions but to its being excavated. Who excavated it was immaterial.

We are of the opinion that there is no reversible error in the record, and the judgment of the county court is affirmed.

*Judgment affirmed.*

DUNN and THOMPSON, JJ., dissenting.